PUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

KIMBERLY MILES,
            *Plaintiff-Appellant,*

v.

DELL, INCORPORATED,
            *Defendant-Appellee.*

EQUAL EMPLOYMENT OPPORTUNITY
COMMISSION,
            *Amicus Supporting Appellant.*

No. 04-2500

Appeal from the United States District Court
for the Eastern District of Virginia, at Alexandria.
Gerald Bruce Lee, District Judge.
(CA-03-1459-A)

Argued: September 21, 2005

Decided: November 22, 2005

Before LUTTIG, Circuit Judge, HAMILTON, Senior Circuit Judge,
and James C. DEVER, III, United States District Judge
for the Eastern District of North Carolina,
sitting by designation.

---

Affirmed in part, vacated in part, and remanded by published opinion.
Judge Luttig wrote the opinion, in which Senior Judge Hamilton and
Judge Dever joined.

---

## COUNSEL

**ARGUED:** Mona Lyons, Washington, D.C., for Appellant. Elizabeth Ellen Theran, UNITED STATES EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, Washington, D.C., for Amicus Supporting Appellant. Jonathan S. Franklin, HOGAN & HARTSON, L.L.P., Washington, D.C., for Appellee. **ON BRIEF:** Eric S. Dreiband, General Counsel, Carolyn L. Wheeler, Acting Associate General Counsel, Vincent J. Blackwood, Assistant General Counsel, UNITED STATES EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, Washington, D.C., for Amicus Supporting Appellant. Jessica L. Ellsworth, HOGAN & HARTSON, L.L.P., Washington, D.C., for Appellee.

## OPINION

LUTTIG, Circuit Judge:

Plaintiff-appellant Kimberly Miles, a former account manager at Dell, Inc., sued Dell for sex discrimination, pregnancy discrimination, and retaliation under Title VII. The district court granted Dell's motion for summary judgment as to all three claims, concluding that, under governing circuit precedent, Miles failed to make out a prima facie case of sex or pregnancy discrimination because she was replaced by another female, and that Miles failed to exhaust her administrative remedies with respect to her retaliation claim because she did not allege retaliation in the charge she filed with the Equal Employment Opportunity Commission. Because the district court did not consider whether Miles' case falls within the different-decisionmaker exception to the fourth prong of the Title VII prima facie case that we recognize today, we vacate the grant of summary judgment with respect to Miles' sex and pregnancy discrimination claims. We affirm the grant of summary judgment with respect to Miles' retaliation claim.

### I.

From January 1999 to June 2002, plaintiff-appellant Kimberly Miles worked as an account manager for defendant-appellee Dell, Inc.[1]

---

[1]Because Miles was the non-moving party, we view the facts, and recite them here, in the light most favorable to her.

J.A. 45, 240. From March 2001 until her dismissal, Miles' supervisor was James Glaze, a regional sales manager who oversaw Miles' sales team. *Id*. at 418, 439. On March 21, 2001, Miles informed Glaze that she was pregnant. *Id*. at 430.

In April 2001, Glaze reduced Miles' sales territory and reassigned her key accounts in Northern Virginia, where she lived, to another employee who had no prior sales experience and lived in Texas. *Id*. at 422. Miles asked Glaze if he had reassigned her territory because of her pregnancy, but he would not discuss the matter with her. *Id*. at 425. Miles complained to one of Glaze's superiors about her mistreatment and told Glaze that she had done so. *Id*.

In May 2001, Glaze increased Miles' individual sales quotas and told her that she would remain responsible for achieving those quotas during any maternity leave she might take. *Id*. at 431, 442-43. Glaze also reported (falsely, Miles says) to Dell's human resources officer that Miles had lied to him about the status of a contract with one of Dell's customers. *Id*. at 326. Glaze requested permission to terminate Miles, but that request was refused. *Id*. On June 30, 2001, Miles gave birth to her daughter. *Id*. at 427. After taking two weeks of maternity leave, Miles returned to work. *Id*. at 169. Nine months later, on March 28, 2002, Glaze gave Miles an unsatisfactory rating for her performance in 2001 and shortly thereafter placed her on a performance-improvement plan ("PIP"). *Id*. at 200-06, 207-09. Miles again informed Glaze that she intended to complain to his supervisor about her mistreatment, and she did so. *Id*. at 425-26. Miles told Glaze's supervisor that Glaze had been hostile towards her from the time she told him she was pregnant. *Id*.

On May 1, 2002, Glaze forwarded an e-mail from one of Miles' disgruntled clients to Dell management, along with a request that Miles be terminated. *Id*. at 214. Shortly thereafter, a member of Dell's human resources department contacted Glaze, advised him that she agreed that termination was the right decision, and instructed him to draft a termination letter. *Id*. at 148-49. Miles claims that the disgruntled customer whose e-mail Glaze forwarded was one that she had brought to his attention, and that Glaze had assured her she was handling the situation appropriately and refused her request that he assign extra help to that account. *Id*. at 251.

On June 24, 2002, while she was on her way to the airport for a business trip, Miles received a call from Glaze, who told her to meet him at the airport Hilton to discuss her PIP. *Id*. at 240. When they met, Glaze handed Miles her termination letter, demanded that she surrender her company cell phone and laptop, and, according to Miles, said: "So, what do you think of me now?" *Id*. Miles alleges that throughout the time she worked under Glaze, she met Dell's legitimate expectations and indeed that she outperformed her male colleagues, who were not placed on PIPs or fired. *Id*. at 234. She claims that the reasons for her dismissal stated in her termination letter were inaccurate, inflated, or false, and that Glaze had told her all along that she was doing fine, while in fact he was setting her up for failure. *Id*. at 241-42.

In August 2002, Dell offered Miles' position to Susan Patrick. *Id*. at 366. Miles claims that Glaze first tried to fill her position with a male, Michael McGill, but was vetoed by his superiors, who insisted on hiring another female account manager. *Id*. at 289-90. Melissa Phillips, an account executive under Glaze, submitted an affidavit in which she testified:

> After [Glaze] fired [Miles] in June, 2002, I talked with him several times about his plans for hiring a new account manager for the Navy sales team. [Glaze] told me, and others in my presence, that he wanted to hire Mike McGill, a member of Dell's support staff. [Glaze] said he was pushing hard to get Mike hired, and hoped and expected that he would get approval to do so . . . . In August, 2002 . . . [Glaze] told me that Mike had not been approved for the account manager position. [Glaze] also told me that [Glaze's boss] had insisted that [Glaze] hire Susan Patrick because they needed another female account manager. [Glaze] expressed disappointment and frustration to me about having to hire Susan, and told me he had no choice in the matter.

*Id*.

On November 13, 2002, Miles filed a charge with the EEOC. *Id*. at 228-29. On her charge form, she checked the box for sex discrimination, but not the box for retaliation. *Id*. In her narrative explaining

her charge, Miles stated that Glaze had been hostile to her after finding out she was pregnant, that she complained of Glaze's hostile attitude to Glaze's supervisor, and that, after firing her, Glaze refused to answer her questions about why she was fired, but answered only, "So, what do you think of me now?" *Id*. On April 16, 2003, Miles' attorney sent a letter to the EEOC that explicitly alleged retaliation. *Id*. at 483-86. That letter was not served on Dell.

On November 21, 2003, Miles filed a complaint against Dell in the Eastern District of Virginia, alleging sex discrimination, pregnancy discrimination, and retaliation. *Id*. at 7-14. The district court granted Dell's motion for summary judgment as to all three claims. *Id*. at 538. The district court concluded that Miles' sex and pregnancy discrimination claims failed as a matter of law "because she [did] not state a prima facie case of discrimination since she was replaced by a member of her protected class." *Id*. at 533. The district court held that Miles' retaliation claim failed because she did not exhaust her administrative remedies. *Id*. at 536-38. We examine each of Miles' claims in turn.

## II.

In *McDonnell Douglas Corp.* v. *Green*, the Supreme Court held that "[t]he complainant in a Title VII trial must carry the initial burden under the statute of establishing a prima facie case" of discrimination. 411 U.S. 792, 802 (1973). The Fourth Circuit has held that, under the *McDonnell Douglas* framework, a Title VII plaintiff relying on indirect evidence must establish a prima facie case of discrimination by showing that "(1) she is a member of a protected class; (2) she suffered adverse employment action; (3) she was performing her job duties at a level that met her employer's legitimate expectations at the time of the adverse employment action; and (4) the position remained open or was filled by similarly qualified applicants outside the protected class." *Hill* v. *Lockheed Martin Logistics Mgmt.*, 354 F.3d 277, 285 (4th Cir. 2004) (*en banc*). Because Miles was replaced by another woman, the district court held that Miles could not satisfy prong four of the prima facie case and that her sex and pregnancy discrimination claims accordingly failed as a matter of law.

We conclude that, in appropriate cases, a Title VII plaintiff can make out a prima facie case without satisfying prong four. Specifi-

cally, we hold that, in cases where the plaintiff can show that the firing and replacement hiring decisions were made by different decisionmakers, the plaintiff can make out a prima facie case without showing replacement by someone outside the protected class.

This court's requirement that Title VII plaintiffs show replacement outside the protected class as part of their prima facie case is not dictated by Supreme Court precedent. The fourth prong of the prima facie case laid out by the Court in *McDonnell Douglas*, a refusal-to-hire case, did not require the plaintiff to show that the individual ultimately hired be outside the plaintiff's protected class. 411 U.S. at 802 (requiring, under the fourth prong, that the plaintiff show only "that, after his rejection, the position remained open and the employer continued to seek applicants from persons of complainant's qualifications."). Indeed, the Supreme Court has never addressed the question whether a Title VII plaintiff must show that she was replaced by someone outside her protected class in order to make out a prima facie case. *Cf. O'Connor* v. *Consolidated Coin Caterers Corp.*, 517 U.S. 308, 312-13 (1996) (holding that, under the Age Discrimination in Employment Act, an age discrimination plaintiff is not required to show that he was replaced by someone outside the protected class).

Nevertheless, in *Brown* v. *McLean*, we held, relying on *St. Mary's Honor Center* v. *Hicks*, 509 U.S. 502 (1993),[2] that "[i]n order to make out a prima facie case of discriminatory termination, a plaintiff must *ordinarily* show that the position ultimately was filled by someone not a member of the protected class." 159 F.3d 898, 905 (4th Cir. 1998)(emphasis added); *see also Lockheed Martin*, 354 F.3d at 285; *King* v. *Rumsfeld*, 328 F.3d 145, 149 (4th Cir. 2003); *Brinkley* v. *Harbour Recreation Club*, 180 F.3d 598, 607 (4th Cir. 1999). As Dell points out, this rule is so well-settled in this circuit that we have previ-

---

[2]*Hicks* does not dictate the result we reached in *Brown*. In *Hicks*, the Supreme Court did note that the defendant had not challenged the district court's finding that the plaintiff, who was black, had made out a prima facie case by showing, among other things, "that the position remained open and was ultimately filled by a white man." 509 U.S. 502, 506 (1993). But, of course, that is not to hold that Title VII plaintiffs must show replacement outside the protected class as part of their prima facie case.

ously affirmed dismissals under prong four without even issuing published decisions. *See White* v. *South Carolina Dep't of Social Servs.*, No. C/A 3:01-2926-24BC, 2003 WL 22989086, at *6 (D.S.C. Feb. 6, 2003) ("Plaintiffs fail to establish a prima facie case of discrimination based on race because they fail to show the fourth prong of their prima facie case [given that] the person selected was also a member of the protected class."), *aff'd*, No. 03-1266, 2003 WL 21546032 (4th Cir. July 10, 2003); *Hill* v. *Wal-Mart Stores, Inc.*, No. 5:00CV425-F(2), 2000 WL 33682673, at *4 (E.D.N.C. Sept. 26, 2000) ("Where, as here, a male plaintiff is replaced by another man, a defendant's motion for summary judgment should be allowed in a gender discrimination case."), *aff'd*, No. 00-2361, 2001 WL 293236 (4th Cir. Mar. 27, 2001).

It is thus clear that the law in this circuit is that, as a general rule, Title VII plaintiffs must show that they were replaced by someone outside their protected class in order to make out a prima facie case. However, we have recognized that "there may be exceptions to this rule in limited situations." *Brown*, 159 F.3d at 905 (citing, as possible exceptions, cases where (1) an age discrimination plaintiff is replaced by a much younger person within the same class, (2) a significant lapse of time occurs between the adverse employment action and the decision to hire another person, and (3) the employer's hiring of another person within the protected class is calculated to disguise its act of discrimination). Moreover, every other circuit has held that a Title VII plaintiff does not always have to show replacement outside the protected class in order to make out a prima facie case.[3] This is

---

[3]*See Cumpiano* v. *Banco Santander Puerto Rico*, 902 F.2d 148, 155 (1st Cir. 1990) ("[I]n a case where an employee claims to have been discharged in violation of Title VII, she can make out the fourth element of her prima facie case without proving that her job was filled by a person not possessing the protected attribute."); *Meiri* v. *Dacon*, 759 F.2d 989, 995-96 (2d Cir. 1985) (rejecting a requirement that Title VII plaintiffs show replacement outside the protected class as part of their prima facie case as "inappropriate and at odds with the policies underlying Title VII"); *Pivirotto* v. *Innovative Systems, Inc.*, 191 F.3d 344, 355 (3d Cir. 1999) (holding that it is error "to require a plaintiff to prove that she was replaced by someone outside her class in order to make out a prima facie case"); *Williams* v. *Trader Publ'g Co.*, 218 F.3d 481, 485 (5th Cir. 2000)

consistent with the Supreme Court's recognition, beginning with *McDonnell Douglas* itself, that *McDonnell Douglas*' prima facie case requirements are "not necessarily applicable in every respect to differing factual situations." 411 U.S. at 802 n.13; *Furnco Constr. Corp.* v. *Waters*, 438 U.S. 567, 577 (1978) ("The method suggested in *McDonnell Douglas* for pursuing this inquiry . . . was never intended to be rigid, mechanized, or ritualistic.").

---

("[I]t is well settled that, although replacement with a non-member of the protected class is evidence of discriminatory intent, it is not essential to the establishment of a *prima facie* case under Title VII."); *Jackson* v. *Richards Med. Co.*, 961 F.2d 575, 587 n.12 (6th Cir. 1992) ("Title VII does not require that the plaintiff, as part of a prima facie case, show that he or she was replaced by a person outside the protected class.") (internal quotation marks omitted); *Carson* v. *Bethlehem Steel Corp.*, 82 F.3d 157, 159 (7th Cir. 1996) ("That one's replacement is of another race, sex, or age may help to raise an inference of discrimination, but it is neither a sufficient nor a necessary condition."); *Walker* v. *St. Anthony's Med. Ctr.*, 881 F.2d 554, 558 (8th Cir. 1989) ("[T]he sex of [a Title VII plaintiff's] replacement, although a relevant consideration, is not necessarily a determinative factor in answer to either the initial inquiry of whether she established a prima facie case or the ultimate inquiry of whether she was the victim of discrimination."); *Lyons* v. *England*, 307 F.3d 1092, 1117 (9th Cir. 2002) ("[W]hether the employer filled any particular position with a member of [plaintiff's] protected class is more properly considered as evidence produced by the employer to rebut an inference of discrimination rather than as evidence essential to [plaintiff's] *prima facie* case."); *Kendrick* v. *Penske Transp. Servs.*, 220 F.3d 1220, 1229 (10th Cir. 2000) ("[A] plaintiff alleging discriminatory discharge ordinarily need not show that a person outside of the protected class was hired to fill his former position in order to make out a prima facie case of discrimination."); *Howard* v. *Roadway Express, Inc.*, 726 F.2d 1529, 1534 (11th Cir. 1984) ("[P]roof that the employer replaced the fired minority employee with a non-minority employee is not the *only* way" for a Title VII plaintiff to establish a prima facie case) (quoting *Jones* v. *Western Geophysical Co. of America*, 669 F.2d 280, 284 (5th Cir. 1982)); *Stella* v. *Mineta*, 284 F.3d 135, 146 (D.C. Cir. 2002) ("[A] plaintiff in a discrimination case need not demonstrate that she was replaced by a person outside her protected class in order to carry her burden of establishing a prima facie case under *McDonnell Douglas*.").

The district court recognized that there may be exceptions to prong four, but concluded that they were limited to the three mentioned in *Brown*. *See* J.A. at 534-35. We reject this understanding. Nothing in *Brown* or in logic suggests that *Brown*'s list of possible exceptions is exhaustive. Miles urges us to the opposite extreme, asking us to hold that a plaintiff may bypass prong four whenever the totality of her evidence gives rise to an inference of discrimination. We also reject this position. To adopt Miles' position would be essentially to read prong four out of the prima facie case, which this panel is not at liberty to do given the clear rule in this circuit that Title VII plaintiffs must ordinarily show replacement outside the protected class.[4]

Although we are without the authority to dispense with the fourth prong altogether whenever the plaintiff's evidence could be said to give rise to an inference of discrimination, we do believe, though, that it is permissible for a panel of the court to recognize exceptions to prong four for categories of cases that call for an exception. In order to determine whether an exception to the fourth prong is warranted of course, we must consider the purpose of that prong. Although neither *Brown* nor any other decision of this court of which we are aware provides a justification for prong four, it seems evident to us that a plaintiff must ordinarily show that she was replaced by someone outside her protected class because, when someone within her protected class is hired as a replacement, that fact ordinarily gives rise to an inference that the defendant did not fire the plaintiff because of her protected status. For example, when a female plaintiff is fired and the employer replaces her with another woman, that fact at least tends to show that

---

[4]The EEOC argues that this court has in fact already adopted Miles' position. It cites *EEOC* v. *Sears Roebuck & Co.*, in which we noted that "[w]hat is critical with respect to the fourth element is that the plaintiff demonstrate he was not hired (or fired or not promoted, etc.) 'under circumstances which give rise to an inference of unlawful discrimination.'" 243 F.3d 846, 851 n.2 (4th Cir. 2001) (quoting *Texas Dep't of Cmty. Affairs* v. *Burdine*, 450 U.S. 248, 253 (1981)). However, this statement does not prove that this court has adopted Miles' totality-of-the-circumstances test. *Sears Roebuck* is not inconsistent with *Brown*'s rule that plaintiffs must ordinarily show replacement outside the protected class. *Brown* simply recognizes that a plaintiff who was replaced by another member of her protected class will not ordinarily be able to show that she was discharged under circumstances that give rise to an inference of discrimination.

the employer's motivation for firing the plaintiff was not her sex, because an employer is unlikely to hire a female replacement if its reason for firing the plaintiff was that she was female. In other words, replacement within the protected class gives rise to an inference of non-discrimination with respect to the protected status. The fourth prong requires plaintiffs, as part of their prima facie case, to eliminate this inference of non-discrimination.[5]

---

[5]At times by way of shorthand but frequently out of misunderstanding, it is often said that satisfaction of the prima facie case gives rise to an actual inference of discrimination. However, this is incorrect. The prima facie case serves as a screen for cases whose facts give rise to an inference of non-discrimination — screening those cases out — rather than as a test the satisfaction of which affirmatively establishes an actual inference of discrimination. The Supreme Court could not have been any clearer in *Texas Department of Community Affairs* v. *Burdine*: "The prima facie case serves an important function in the litigation: it eliminates the most common nondiscriminatory reasons for the plaintiff's rejection." 450 U.S. 248, 253-54 (1981).

In *Burdine*, the Court also explained the distinction between an actual inference of discrimination and the presumptive inference to which the prima facie case gives rise: "As [we] explained in *Furnco Construction Corp.* v. *Waters*, 438 U.S. 567, 577 (1978), the prima facie case 'raises an inference of discrimination *only because we presume these acts, if otherwise unexplained, are more likely than not based on the consideration of impermissible factors*.'" 450 U.S. at 254 (emphasis added); *see also id.* at 254-55, 255 n.10 (stating that "[e]stablishment of the prima facie case in effect creates a presumption that the employer unlawfully discriminated against the employee" and that, "[i]f the defendant carries [its] burden of production, the presumption raised by the prima facie case is rebutted" and "drops from the case"). In fact, attempting to clarify the confusion that had arisen from its earlier statements that satisfaction of the prima facie case does give rise to an inference of discrimination, the Court acknowledged that in *McDonnell Douglas* it "should have made it apparent that in the Title VII context we use 'prima facie case'" in the sense only "of a legally mandatory, rebuttable presumption," not in the sense of "enough evidence to permit the trier of fact to infer the fact at issue." *Id.* at 254 n.7. And post-*Burdine*, the Court has been careful not to say (or at least not to say without cross-reference to its limiting explanation in *Burdine*) that satisfaction of the prima facie case affirmatively gives rise to an *actual inference* of discrimination, as opposed to a mere (and rebuttable) *presumption* of such.

However, replacement within the protected class does not always give rise to an inference of non-discrimination. One clear example of this is when the defendant hires someone from within the plaintiff's protected class in order "to disguise its act of discrimination toward the plaintiff." *See Brown*, 159 F.3d at 905-06. The Seventh Circuit has provided another example:

> Suppose an employer evaluates its staff yearly and retains black workers who are in the top quarter of its labor force, but keeps any white in the top half. A black employee ranked in the 60th percentile of the staff according to supervisors' evaluations is let go, while all white employees similarly situated are retained. This is race discrimination, which the employer cannot purge by hiring another person of the same race later.

*Carson* v. *Bethlehem Steel Corp.*, 82 F.3d 157, 158 (7th Cir. 1996). In cases like these, whether because of the particular circumstances surrounding the firing decision or because of the particular circumstances surrounding the replacement hiring decision, the employer's decision to hire someone of the plaintiff's protected class as a replacement does not give rise to an inference of non-discrimination with respect to the decision to fire the plaintiff. In such cases, the fourth prong of the prima facie case ought to give way. *Cf. Consolidated Coin*, 517 U.S. at 312 (concluding that a showing of replacement outside the protected class is not required in age discrimination cases because such replacement "lacks probative value" as to the defendant's discriminatory intent).

We believe that another such category of cases is that wherein the firing and replacement hiring decisions are made by different decisionmakers. In such cases, we are convinced that the replacement hiring decision simply does not give rise to an inference of non-discrimination with respect to the firing decision. That is, when one individual makes the decision to fire the plaintiff and another makes the replacement hiring decision, the second individual's hiring decision has no probative value whatsoever as to whether the first individual's firing decision was motivated by the plaintiff's protected status. We accordingly hold that, when a Title VII plaintiff can show that the firing and hiring decisions were made by different decisionmakers,

she need not show as part of her prima facie case that she was replaced by someone outside her protected class.

The record before us suggests that such may have been the case here. Miles' evidence suggests that Glaze was principally responsible for firing her, but that his superiors made the decision to hire Susan Patrick, overruling his preference to hire a male. However, the record has not been sufficiently developed with respect to this issue. We accordingly vacate the district court's grant of summary judgment as to Miles' sex and pregnancy discrimination claims and remand this case to the district court for a determination whether Miles has established a genuine issue of material fact as to whether the decision to fire her was made by a decisionmaker different from the one that hired Susan Patrick. *See Lockheed Martin*, 354 F.3d at 286-98 (considering at length the question who is a decisionmaker for purposes of discrimination actions brought under Title VII). If so, then Miles can establish a prima facie case of sex and pregnancy discrimination despite the fact that she was replaced by a woman.[6]

### III.

The district court granted Dell's motion for summary judgment as to Miles' pregnancy discrimination claim for the same reason that it granted the motion with respect to her sex discrimination claim — namely, that Miles had not shown that she was replaced by someone outside her protected class. *See* J.A. at 535 ("Because Ms. Miles was not replaced by a person outside her protected class . . . her sex and pregnancy discrimination claims fail."). As we have already concluded, Miles is not required to show that she was replaced by someone outside her protected class if she can establish on remand a genuine issue of material fact as to whether the decision to fire her was made by a decisionmaker different from the one that hired Susan Patrick.

---

[6]Dell argues that Miles also failed to make out a prima facie case because she did not establish a genuine issue of material fact as to whether she was meeting its legitimate expectations. We express no view on this matter and leave it to be adjudicated in the first instance by the district court.

Even if Miles cannot make the different-decisionmaker showing on remand and must therefore satisfy the fourth prong of the prima facie case, she has done so with respect to her pregnancy discrimination claim. As even Dell conceded at oral argument, for purposes of establishing a prima facie case of pregnancy discrimination, the protected class is pregnant women, not all women.[7] *See Gleklen* v. *Democratic Congressional Campaign Comm., Inc.*, 199 F.3d 1365, 1368 (D.C. Cir. 2000); *Kennedy* v. *Schoenberg, Fisher & Newman, Ltd.*, 140 F.3d 716, 726 (7th Cir. 1998); *Bergstrom-Ek* v. *Best Oil Co.*, 153 F.3d 851, 858 (8th Cir. 1998); *Cumpiano*, 902 F.2d at 154. Because Susan Patrick was not pregnant when Dell hired her, Miles has shown, with respect to her pregnancy discrimination claim, that she was replaced by someone outside her protected class.

Conceding this point, Dell asserts an alternate ground for affirming the district court's grant of summary judgment in its favor on Miles' pregnancy discrimination claim. Dell argues that, because Miles was not fired until almost a year after she gave birth, any causal connection between her pregnancy and her termination is so attenuated that her claim must fail as a matter of law. Dell cites us to two Fourth Circuit Title VII retaliation cases in which we have stated that a lengthy time lapse between the employer becoming aware of the protected activity and the alleged adverse employment action negates any infer-

---

[7]As noted, *supra* note 5, Title VII's prima facie case functions to screen out cases whose facts give rise to an inference of non-discrimination, rather than to establish an actual inference of discrimination. *See Burdine*, 450 U.S. at 253-54 ("The prima facie case serves an important function in the litigation: it eliminates the most common non-discriminatory reasons for the plaintiff's rejection."). The fact that an employer hires a non-pregnant person, male or female, to replace a pregnant woman does not establish an affirmative inference that the employer fired the pregnant woman because of her pregnancy. However, the replacement of a pregnant woman with another pregnant woman establishes an inference that the dismissal of the first woman was unrelated to her pregnancy. We thus require plaintiffs to exclude this inference of non-discrimination as part of their prima facie case. We do not, however, require that a pregnant woman show that she was replaced by a male because replacement by a non-pregnant female, just as replacement by a male, does not establish an inference of non-discrimination with respect to pregnancy.

ence that a causal connection exists between the two. *See Causey* v. *Balog*, 162 F.3d 795, 803 (4th Cir. 1998) ("A thirteen month interval between the charge and termination is too long to establish causation absent other evidence of retaliation."); *Dowe* v. *Total Action Against Poverty*, 145 F.3d 653, 657 (4th Cir. 1998) (holding that a lapse of three years between the protected activity and the adverse employment action negated the inference of causation).[8] These cases do not dictate the outcome Dell seeks here. First, these were retaliation cases, in which plaintiffs must show a causal connection between the retaliation and the protected activity as part of their prima facie case, *see id.* at 656, and no such showing is required as part of the pregnancy discrimination prima facie case. Second, in *Dowe*, the "lengthy" time lapse that we held negated the causal inference was over three years, significantly longer than the time lapse here. *Id.* at 657. Third, *Causey*'s determination that a thirteen month interval was sufficient to negate the causal inference depended on the absence of other evidence of retaliation. 162 F.3d at 803.

Here, despite the year lapse between Miles' pregnancy and her termination, we are persuaded, viewing the evidence in the light most favorable to Miles, that she has introduced sufficient evidence for a rational jury to conclude that there was a causal connection between the two. First, it is uncontested that in May 2001, while Miles was still pregnant, Glaze unsuccessfully tried to get authorization to fire her. A jury could rationally conclude that Glaze wanted to fire Miles because of her pregnancy but was rebuffed in his first attempt and simply bided his time until he could convince management to let him fire her, all the while harboring a discriminatory animus. Second, a rational jury could conclude that Glaze reduced Miles' sales territory and increased her quotas because she was pregnant and that those actions set her up for the failures that he later used to make the case for her termination to management. If a jury believed either of these scenarios, it could rationally conclude that there was a causal connection between Miles' pregnancy and her termination. Therefore, it

---

[8]Dell also cites *Hooven-Lewis* v. *Caldera*, 249 F.3d 259, 278 (4th Cir. 2001), which states that "[a] six month lag is sufficient to negate any inference of causation." That case, however, was not even a Title VII case, and the statement Dell relies on was dicta because in *Hooven-Lewis*, as in *Causey*, there was no evidence of causation. *Id.*

would be inappropriate to hold that the causation element of Miles' pregnancy discrimination claim — and thus her entire claim — fails as a matter of law because of the lapse of time. Whether Miles' pregnancy motivated or otherwise resulted in Dell's decision to fire her is a question properly left to the jury.

IV.

The district court granted Dell's motion for summary judgment as to Miles' retaliation claim on the grounds that she failed to exhaust her administrative remedies. J.A. 536-38. "Before a plaintiff has standing to file suit under Title VII, he must exhaust his administrative remedies by filing a charge with the EEOC." *Bryant* v. *Bell Atlantic Maryland, Inc.*, 288 F.3d 124, 132 (4th Cir. 2002). The exhaustion requirement ensures that the employer is put on notice of the alleged violations so that the matter can be resolved out of court if possible. *See EEOC* v. *American Nat'l Bank*, 652 F.2d 1176, 1186 (4th Cir. 1981). While "[t]he EEOC charge defines the scope of the plaintiff's right to institute a civil suit," "[a]n administrative charge of discrimination does not strictly limit a Title VII suit which may follow; rather, the scope of the civil action is confined only by the scope of the administrative investigation that can reasonably be expected to follow the charge of discrimination." *Bryant*, 288 F.3d at 132 (quoting *Chisholm* v. *United States Postal Serv.*, 665 F.2d 482, 491 (4th Cir. 1981)). In other words, "[i]f a plaintiff's claims in her judicial complaint are reasonably related to her EEOC charge and can be expected to follow from a reasonable administrative investigation, the plaintiff may advance such claims in her subsequent civil suit." *Smith* v. *First Union Nat'l Bank*, 202 F.3d 234, 247-48 (4th Cir. 2000).

The question in this case is thus whether Miles' claim that she was retaliated against for complaining about discriminatory treatment is reasonably related to her EEOC charge such that it would have reasonably been expected to follow from an administrative investigation of that charge. The district court concluded that it is not. We agree. Miles did not check the retaliation box on her charge form, and the narrative explaining her charge made no mention of retaliation. *See* J.A. 228-29 ("I believe that I was discriminated against due to my sex (female) and (pregnancy).") The EEOC points out that Miles stated in her charge that she had complained to Glaze's supervisor and that

Glaze told her, "So, what do you think of me now?" when he fired her. These facts, the EEOC argues, establish that Miles' retaliation claim is reasonably related to her sex and pregnancy discrimination claims and would have followed from an investigation of those claims.[9]

We are unpersuaded. Although Miles' narrative states that she complained to Glaze's supervisor, it does not state that she complained to him *about discrimination*. *Id*. at 228 (stating only that Miles "discussed the issue of the hostile attitude of Mr. Glaze"). Nor does it state that Glaze was aware that Miles had complained to his supervisor. And Glaze's alleged statement to Miles does not necessarily imply that Glaze was motivated by a retaliatory impulse. In short, Miles' charge does not remotely allege that Glaze retaliated against her because she had complained of his discriminatory conduct to his supervisor, and it does not otherwise allege facts that would have put Dell or the EEOC on notice that she was charging Dell with retaliation. We thus agree with the district court that Miles' retaliation claim is not reasonably related to her charge such that it would have been expected to follow from an investigation of Miles' sex and pregnancy discrimination claims. *Cf. Bryant*, 288 F.3d at 133 ("Administrative investigation of retaliation . . . could not reasonably be expected to occur in light of Bryant's sole charge of race discrimination, and the investigation of the complaint did not touch on any matters other than race discrimination.").

Miles claims that, in determining whether she exhausted her administrative remedies, we should consider not only her charge, but also a letter she later sent to the EEOC that explicitly alleged retaliation. That letter, which was sent five months after Miles filed her charge and was not served on Dell, does not cure her failure to allege retaliation in the charge and is insufficient to meet the administrative exhaustion requirement. *See Sloop* v. *Memorial Mission Hosp., Inc.*, 198 F.3d 147, 149 (4th Cir. 1999) ("[I]t would be objectively illogical to view a private letter from a complaining party to the EEOC as constructively amending a formal charge, given that one of the purposes

---

[9]The EEOC's assertion that Miles' retaliation claim was one that would reasonably have been expected to follow from its investigation is belied by the fact that the EEOC did not investigate retaliation in response to Miles' charge.

of requiring a party to file charges with the EEOC is to put the charged party on notice of the claims raised against it.").

## CONCLUSION

For the foregoing reasons, the judgment of the district court as to Miles' sex and pregnancy discrimination claims is vacated and the case remanded for further proceedings not inconsistent with this opinion. The judgment of the district court as to Miles' retaliation claim is affirmed.

*AFFIRMED IN PART, VACATED IN PART,*
*AND REMANDED*