**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 11-2386**

ANNE COLLINS,

Plaintiff – Appellant,

v.

BALTIMORE CITY BOARD OF SCHOOL COMMISSIONERS,

Defendant – Appellee.

Appeal from the United States District Court for the District of Maryland, at Baltimore.  Marvin J. Garbis, Senior District Judge.  (1:09-cv-02020-MJG)

Argued:  January 31, 2013                   Decided:  June 10, 2013

Before WILKINSON, SHEDD, and DIAZ, Circuit Judges.

Affirmed by unpublished opinion.  Judge Shedd wrote the opinion in which Judge Wilkinson joined.  Judge Diaz wrote a separate opinion concurring in part and dissenting in part.

**ARGUED:** John B. Stolarz, Baltimore, Maryland, for Appellant. Leslie Robert Stellman, PESSIN & KATZ, PA, Towson, Maryland, for Appellee.  **ON BRIEF:** Tammy L. Turner, CITY BOARD OF SCHOOL COMMISSIONERS, Baltimore, Maryland, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

SHEDD, Circuit Judge:

Anne Collins appeals the district court's order granting summary judgment in favor of the Baltimore City Board of School Commissioners ("School Board") on her claims for race and age discrimination. For the following reasons, we affirm.

## I.

We view the evidence in the light most favorable to Collins, the non-moving party. Laber v. Harvey, 438 F.3d 404, 415 (4th Cir. 2006) (en banc).[1] Collins, an African American who was over 60-years old at all relevant times, worked as a teacher and administrator in the Baltimore City Public School System from 1966 until she retired just before the 2006-07 academic year. During her final year of employment, Collins worked as the Foreign Language Department Head at Patterson High School. Collins also served as Director of Patterson's Twilight

---

[1] Collins argues that the doctrine of collateral estoppel required the district court to accept the facts found by a Hearing Examiner who took evidence in a grievance that Collins filed after her retirement. The district court found that collateral estoppel did not apply, and we agree. Even if Maryland law requires courts to give preclusive effect to an administrative agency's decision, Neifert v. Dep't of Env't, 910 A.2d 1100, 1112 (Md. 2006), the facts that Collins contends have preclusive effect are contained in a Hearing Examiner's recommendation that the School Board eventually rejected. Therefore, the facts do not represent an administrative agency's decision, and they have no preclusive effect.

Program, an evening program offered at several schools in the district.

After the 2005-06 school year concluded, Collins wrote to Patterson's principal, Laura D'Anna, in response to an inquiry about teaching summer school. Collins informed D'Anna that she did not wish to teach summer school, and she also expressed her opinion that she was overworked and underappreciated at Patterson and that she needed "to take this chance to have a new beginning." J.A. 274. Though Collins did not intend for the letter to be a transfer request, D'Anna interpreted it that way and informed Human Services Specialist David Bonn that Collins wished to be transferred. She also told Bonn that Collins had taught French in the past, which led Bonn to assume that Collins was certified to teach the subject. Accordingly, Bonn transferred Collins to a French teaching position at Forest Park High School, which paid approximately $3000 per year less than the Department Head position Collins held at Patterson. Although Bonn understood that Collins had requested the transfer, he checked the "demotion" box on the School Board's Human Resources Change Form because Collins's new position paid less than her old one. Further, he did not check the box to indicate that the transfer was "voluntary" because Collins had not completed the paperwork required for Bonn to classify the transfer as "voluntary."

The School Board did not replace Collins as Department Head at Patterson because Patterson phased out that position at the time of Collins's transfer. Tiffany Clark, an African American in her 30s, replaced Collins as Director of the Twilight Program.

When Collins arrived at Forest Park to begin the 2006-07 academic year, two problems arose. First, Collins was upset that she was assigned to a teaching position instead of a Department Head position. Second, Bonn's assumption that Collins was certified to teach French was incorrect, and Forest Park had no available positions in subjects Collins was certified to teach. Both Bonn and the Forest Park principal, Loretta Breese, encouraged Collins to file a grievance, and they agreed to allow her to teach French at Forest Park during the pendency of the grievance. Collins declined this offer and retired. She then filed a grievance with the School Board seeking reinstatement to her previous position at Patterson, but the School Board did not reinstate her.[2]

Collins then filed suit in federal district court, alleging race and age discrimination under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e et. seq., and the

---

[2] The grievance did not allege race or age discrimination but merely claimed that the action was "arbitrary and capricious." J.A. 627.

4

Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 et. seq., respectively. After discovery, the School Board moved for summary judgment. The district court granted the motion and entered judgment in favor of the School Board. Collins appeals that judgment.

## II.

### A.

We review the district court's grant of summary judgment de novo. Nader v. Blair, 549 F.3d 953, 958 (4th Cir. 2008). Summary judgment is appropriate where, viewing the evidence in the light favorable to the non-moving party, there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. Id.

### B.

As did the district court, we analyze Collins's claims under the framework developed in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973) (analyzing race discrimination claim); see also Hill v. Lockheed Martin Logistics Mgmt., Inc., 354 F.3d 277, 285 (4th Cir. 2004) (applying McDonnell Douglas framework to age discrimination claim). Under this framework, Collins bears the initial burden of establishing a prima facie case by producing evidence that (1) she is a member of a

protected class, (2) she suffered an adverse employment action,[3] (3) she was performing satisfactorily at the time of her adverse employment action, and (4) the adverse employment action occurred "under circumstances which give rise to an inference of unlawful discrimination."  Miles v. Dell, Inc., 429 F.3d 480, 484-87 (4th Cir. 2005) (quoting Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 253 (1981)).  If Collins establishes a prima facie case, the burden shifts to the School Board to set forth a legitimate, non-discriminatory reason for the adverse employment action.  Price v. Thompson, 380 F.3d 209, 212 (4th Cir. 2004).  Then, to avoid summary judgment, Collins must produce evidence that the School Board's stated reason for the adverse action is pretextual.  Id.  However, "[t]he ultimate burden of persuading the trier of fact that the [School Board] intentionally discriminated against [Collins] remains at all times with [Collins]."  Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 143 (2000), quoting Burdine, 450 U.S. at 253.

---

[3]  Collins argues that the transfer constituted a constructive discharge.  We need not address that contention because, for our analysis, we will assume that the transfer, along with the accompanying pay decrease and failure to be reappointed as Director of the Twilight Program, was an adverse employment action within the meaning of Title VII and the ADEA.

6

In analyzing the School Board's motion, the district court began by assuming that Collins established a prima facie case of age and race discrimination. The court then found that the School Board offered a legitimate, non-discriminatory reason for the adverse action: it transferred Collins because D'Anna interpreted Collins's letter as a request for a transfer. Finally, the district court concluded that Collins failed to produce evidence that the School Board's explanation was pretextual and thus granted summary judgment in favor of the School Board.

On appeal, Collins contends that the district court erred by concluding that she failed to produce evidence that the School Board's explanation for transferring her was pretextual. Collins also contends that the district court improperly applied a "pretext-plus" standard by requiring that she produce evidence that the School Board's stated reason for the transfer was pretextual and evidence that discrimination was the actual reason for the transfer. As explained below, none of these contentions requires reversal. Accordingly, we affirm.

1.

We first address Collins's race discrimination claim. With regard to that claim, we conclude that Collins failed to

7

establish a prima facie case, and, for that reason, we affirm the district court's entry of summary judgment.[4]

As explained above, to establish the fourth element of her prima facie case, Collins must show that her transfer occurred "under circumstances which give rise to an inference of unlawful discrimination." Burdine, 450 U.S. at 253. Usually, a plaintiff does so by showing that she was replaced by an individual outside her protected class, Miles, 429 F.3d at 486, which is what Collins attempts here. Specifically, Collins contends that she was replaced as Department Head by Kelly Flores, a Caucasian. However, the record evidence does not support that contention. The evidence Collins cites for her contention is testimony from another teacher, Erika Edwards, who stated that it "seemed" that Flores had replaced Collins as Department Head because Flores began working out of the office Collins had occupied and became "kind of the go-to" teacher when other teachers had questions. J.A. 769. However, Flores denied that she took on the responsibilities of a Department Head, and D'Anna testified that Patterson did not fill the position after Collins transferred. This record is insufficient to support an

---

[4] We may affirm for any reason appearing on the record, even if that reason was not the basis of the district court's opinion. Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir. 1992).

8

inference that Flores replaced Collins as Department Head. Therefore, Collins failed to establish the fourth element of her prima facie case of race discrimination. Accordingly, we affirm the district court's entry of summary judgment on the race discrimination claim.

2.

We next turn to Collins's age discrimination claim. On this claim, she has established a prima facie case of discrimination by producing evidence to establish all elements of her prima facie case, including that she was replaced as Director of the Twilight Program by a person outside the protected class. However, we agree with the district court's conclusion that Collins produced no evidence that the School Board's explanation for its action was pretextual. Accordingly, we affirm.

Collins asserts that a number of factors support her claim of pretext, but we discuss only one.[5] Collins contends the School Board's explanation that she requested a transfer is inconsistent with the Human Resources Change Form which indicated the transfer was a demotion and did not indicate that

---

[5] Collins's other claims here either address her race discrimination claim or are otherwise irrelevant to her age discrimination claim.

9

the transfer was voluntary.  However, the administrative record of the transfer does not support an inference of pretext.

D'Anna has consistently asserted that she interpreted Collins's letter as a transfer request, an interpretation that we consider a reasonable one under the circumstances.  Thus, even if the School Board mistakenly interpreted the letter as such a request, this mistake is not evidence of pretext or discrimination.  Price, 380 F.3d at 215 n.1 ("[M]ere mistakes of fact are not evidence of unlawful discrimination."); see also Jordan v. Summers, 205 F.3d 337, 344 (7th Cir. 2000) ("Pretext is a lie, not merely a mistake.").  The Human Resources Change Form which Bonn completed is not inconsistent with this explanation.  Bonn believed that Collins had requested the transfer, but Bonn still marked the "demotion" box on the Human Resource Change Form because of the pay decrease.[6]  Further, he did not mark the "voluntary transfer" box because he lacked the requisite paperwork.  There is no testimony that either of these boxes was marked as it was because anyone associated with the school thought the transfer was not voluntary.  Given this uncontradicted explanation, the form is not inconsistent with the School Board's explanation for the transfer and is not

---

[6] We note that a demotion is not itself proof that the transfer is not voluntary.

10

evidence of pretext.  See Hearn v. R.R. Donnelley & Sons Co., 739 F.2d 304, 308 (7th Cir. 1984) (no inference of pretext where defendant gave uncontradicted explanation of potentially "'suspicious circumstances'" surrounding personnel documents). Accordingly, we conclude that Collins failed to produce evidence of pretext.[7]

---

[7] The dissent misconstrues our opinion in a number of ways. For instance, the dissent asserts that we "proclaim the School Board's rationale 'uncontradicted'." We do not; we merely point out that the School Board's explanation of its administrative record is uncontradicted, which is true.  Further, we do not "credit[] the School Board's side in this dispute." We have not weighed the School Board's explanation against Collins's allegations and decided which is more credible.  Under our analysis, which is appropriate whenever there is a question of possible pretext, we take the explanation offered by the employer and examine it in light of any contrary evidence in the record.  That process does not "credit," but instead tests, the School Board's rationale.

The dissent uses what it sees as inconsistencies by the School Board to help create an inference of age (but not race) discrimination.  Even if we were to find those "inconsistencies" in the record, they would be insufficient to create such an inference.  The ultimate burden of persuasion rests with the plaintiff, Reeves, 530 U.S. at 143, and such inconsistency without more is not enough.  Id. at 148 ("Certainly there will be instances where, although the plaintiff has established a prima facie case and set forth sufficient evidence to reject the defendant's explanation, no rational factfinder could conclude that the action was discriminatory.); see also Price, 380 F.3d at 217 n.5 ("although Reeves will allow a plaintiff to survive summary judgment without presenting independent evidence of discrimination . . ., it will permit this only where the other evidence of discrimination . . . ensure[s] that the employer is held liable for unlawful discrimination and not merely for inconsistent statements."); Millbrook v. IBP, Inc., 280 F.3d 1169, 1183 (7th Cir. 2002) (explaining that, even if the plaintiff had produced evidence of pretext, that evidence alone (Continued)

11

III.

For the foregoing reasons, we affirm the district court's entry of summary judgment in favor of the School Board.

AFFIRMED

would not entitle the plaintiff to a jury determination because "[t]here is absolutely no other evidence of intentional discrimination—not one racist comment, nor any harassment."); Slattery v. Swiss Reinsurance Am. Corp., 248 F.3d 87, 94 (2d Cir. 2001) (assuming that the plaintiff had produced evidence of pretext but still affirming summary judgment for the defendant because the evidence of pretext alone was "not enough to permit a jury to find that the real reason [plaintiff] was fired was his age" in light of evidence to the contrary).

12

DIAZ, Circuit Judge, concurring in part and dissenting in part:

I agree with my colleagues that the district court properly granted summary judgment to the Baltimore City School Board on Collins's Title VII race discrimination claim because Collins failed to establish a prima facie case. But given the multiple flaws and inconsistencies in the School Board's nondiscriminatory rationale, I cannot agree that Collins has failed to offer adequate evidence of pretext with regard to her separate Age Discrimination in Employment Act ("ADEA") claim, 29 U.S.C. § 621 et seq.

It is simply not our place to deem the School Board's explanation--that it believed Collins requested reassignment-- "reasonable" or genuine, for Collins has produced sufficient evidence to discredit that justification and create a triable issue as to pretext. See Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 147-48 (2000). Accordingly, I respectfully dissent from the majority's adjudication of the ADEA claim (Part II.B.2).

I.

The Baltimore City School Board hired Collins in 1966 as a foreign language teacher at Patterson High School. In 1973, Collins was promoted to Foreign Language Department Head. In 2002, Collins was appointed as director of the evening "Twilight

School" program for older students seeking a high school diploma. Both positions entailed additional supervisory responsibilities for which Collins received a stipend.

In June 2006, Collins and Principal Laura D'Anna had a conversation in which Collins expressed interest in the assistant principal position at Patterson. After D'Anna explained that she lacked the authority to hire Collins for that position, Collins supposedly conveyed her desire for a "new beginning." J.A. 345. Collins later wrote a letter to human resources expressing her dissatisfaction with the school's criticism and under-appreciation of her performance. The letter concluded that "I have to take this chance to have a new beginning. I can only hope that this September will be different and that my worth will be realized." J.A. 274.

D'Anna claims that she misinterpreted Collins's suggestion for a "new beginning," both in the conversation and the subsequent letter, as a formal request for reassignment to a different school. As a result, D'Anna informed Human Resources Specialist David Bonn that Collins had requested a transfer. Bonn prepared a Human Resources Change Form to authorize the reassignment, which he admitted constituted a demotion, and designated the transfer as an administrative, involuntary reassignment to Forest Park High School. Neither Collins nor the School Board submitted a "Transfer Request Form," which the

Collective Bargaining Agreement required for voluntary transfers, and which directed teachers to "list their choices of new assignment in order of priority." J.A. 354.

Collins received a notification of reassignment on August 19, 2006, which ordered her to report for work at Forest Park four days later. The reassignment resulted in a $3,000 reduction in salary because Collins would not serve as the Foreign Language Department Head or Twilight Director at Forest Park. D'Anna appointed Tiffany Clark, a substantially younger employee, to replace Collins as Twilight Director at Patterson.

II.

A.

Plaintiffs asserting ADEA claims may, just as with Title VII claims, establish liability through direct evidence of discrimination or through the circumstantial proof scheme delineated in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). See Laber v. Harvey, 438 F.3d 404, 430 (4th Cir. 2006) (en banc). Because the majority concedes that Collins has satisfied the prerequisites for a prima facie case under McDonnell Douglas for her ADEA claim, the question becomes whether a jury could find that the School Board's alleged nondiscriminatory rationale for its adverse employment action

15

was pretext for discrimination.  See McDonnell Douglas, 411 U.S. at 804-05.

My colleagues here improperly penalize Collins because at the summary judgment stage she had nothing to show in the way of discriminatory animus except the falsity of the nondiscriminatory explanation offered by her employer.  Yet in Reeves, the Supreme Court explained that a plaintiff can create a triable issue of discrimination simply by discrediting the employer's nondiscriminatory rationale:

> Proof that the defendant's explanation is unworthy of credence is simply one form of circumstantial evidence that is probative of intentional discrimination, and it may be quite persuasive.  In appropriate circumstances, the trier of fact can reasonably infer from the falsity of the explanation that the employer is dissembling to cover up a discriminatory purpose.  Such an inference is consistent with the general principle of evidence law that the factfinder is entitled to consider a party's dishonesty about a material fact as affirmative evidence of guilt.  Moreover, once the employer's justification has been eliminated, discrimination may well be the most likely alternative explanation, especially since the employer is in the best position to put forth the actual reason for its decision. Thus, a plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated.

Reeves, 530 U.S. at 147-48 (internal quotations and citations omitted).

Reeves did qualify its holding with the following proviso: "This is not to say that such a showing will always be adequate

16

to sustain a jury's finding of liability.  Certainly there will be instances where, although the plaintiff has established a prima facie case and set forth sufficient evidence to reject the defendant's explanation, no rational factfinder could conclude that the action was discriminatory."  Id. at 148.  Yet the majority mistakenly cites this exception as the rule, omitting the representative "instances" that the Court highlighted as sufficient to take the case away from a jury.

So, for example, it may well be appropriate for a district court to grant summary judgment to an employer, even when the plaintiff has provided evidence of pretext, (1) where "the record conclusively reveal[s] some other, nondiscriminatory reason for the employer's decision," or (2) "if the plaintiff create[s] only a weak issue of fact as to whether the employer's reason was untrue and there [is] abundant and uncontroverted independent evidence that no discrimination ha[s] occurred." 530 U.S. at 148.  Neither circumstance though applies to Collins's claim.

The majority also cites two circuit cases, apparently for the principle that there must be some affirmative evidence of unlawful animus to create a triable issue of discrimination. But to the extent either Millbrook v. IBP, Inc., 280 F.3d 1169, 1183 (7th Cir. 2002), or Slattery v. Swiss Reinsurance Am. Corp., 248 F.3d 87, 94 (2d Cir. 2001), stand for such a

17

proposition, they are wrong and we should not follow suit.  The singular legacy of Reeves was the demise of the "pretext-plus" proof regime that the majority now resurrects and applies.

The holding in Reeves reflects a practical reality.  An employer is not likely to leave behind direct evidence of intentional discrimination, in which case the only available proof of unlawful animus will be the lie that covers it. Diamond v. Colonial Life & Accident Ins., 416 F.3d 310, 318 (4th Cir. 2005) ("The pretext framework advances that interest by compensating for the fact that direct evidence of intentional discrimination is hard to come by." (internal quotations omitted)).  This is why "the factfinder is entitled to consider a party's dishonesty about a material fact as affirmative evidence of guilt."  Reeves, 530 U.S. at 147 (internal quotations omitted).

Of course, liability ultimately requires the trier of fact to not only find an employer's justification to be false, and thus pretextual, but also find the explanation to be pretext for discrimination.  See Price v. Thompson, 380 F.3d 209, 217 n.5 (4th Cir. 2004).  At summary judgment, however, Reeves only requires the plaintiff to prove the former for the jury to have a "legally sufficient basis" to find the latter at trial.  See Reeves, 530 U.S. at 147-48.

18

B.

Collins has sufficiently discredited the nondiscriminatory explanation, accepted by the majority, that the School Board mistakenly believed that she requested a transfer. As an initial matter, the School Board's straight-faced assertion that it actually believed an employee would want to suffer an adverse employment action is "inherently suspect." Barnes v. GenCorp Inc., 896 F.2d 1457, 1469 (6th Cir. 1990).

Further discrediting this assertion is the School Board's failure to ensure that such a significant action, predicated upon an ambiguously expressed request for a "new beginning," was what Collins truly desired--a step that the School Board at oral argument acknowledged a reasonable employer would have pursued. Instead, after D'Anna informed Bonn that Collins wished to transfer, Bonn immediately initiated the reassignment process, without anyone within the Baltimore City school system checking with Collins to confirm her supposed request. In particular, D'Anna never followed up to ensure that Collins's desire for a "new beginning"--which could have just as easily connoted a figurative "fresh start" at Patterson the next year--was actually a request for reassignment.

Collins denies that she ever requested a transfer, explicitly or implicitly, and points to the fact that the School Board never asked her to file a "Transfer Request Form" as

19

required by the Collective Bargaining Agreement. Among other things, the form would have allowed Collins to "list [her] choices of new assignment in order of priority." J.A. 354.

More importantly, the School Board itself designated the reassignment as an involuntary, administrative transfer. The School Board insists this was a clerical error, and that it did not check the "voluntary" box on the reassignment paperwork because it did not receive a "Transfer Request Form." Yet, no one from the School Board (1) requested that Collins fill out such a form to comply with its own internal policies, or (2) inquired what schools Collins preferred for reassignment, when she wanted to start, or what classes she wanted to teach. Instead, by way of an involuntary administrative transfer, the School Board unilaterally removed and reassigned Collins to Forest Park High School and notified Collins of her reassignment just four days before she was to report for work.

On this record, a reasonable jury could find that this was not a voluntary transfer, thereby impugning the School Board's explanation that it actually believed that it was. At the very least, the notion that Collins's reassignment was a genuine response to an employee's request seems questionable as a factual matter. The School Board's unilateral conduct-- including its own designation of the reassignment as "involuntary"--simply does not square with a supposedly

20

voluntary transfer.   The rash mistake by D'Anna, the clerical discrepancy on the reassignment form, the breach of the School Board's own reassignment policies, and the serial failures by the School Board to follow up on any of the aforementioned signs that the transfer was a mistake, together belie the School Board's story that it transferred Collins because it actually and mistakenly believed that is what she wanted.

Further diminishing the credibility of the School Board is its inability to offer a coherent explanation for this sequence of errors.   Before the district court, the School Board never admitted a mistake and instead claimed that Collins requested the transfer.   Before us, the School Board admitted that it would have been wrong to designate the transfer as voluntary, and at one point suggested that the adverse employment action was an involuntary reassignment designed to resolve personal friction between D'Anna and Collins and remove a malcontented employee from the school.

Taken together, this evidence may not inexorably lead a jury to find discriminatory animus, but there is certainly something amiss with the School Board's shifting explanations for reassigning Collins.   A jury could find that the School Board was negligently but genuinely mistaken, but it could just as easily "infer from the falsity of the explanation that the

21

employer is dissembling to cover up a discriminatory purpose." Reeves, 530 U.S. at 147.

My colleagues are correct that a genuine mistake is not evidence of pretext.  See Price, 380 F.3d at 215 n.1.  But because the majority is plainly wrong to proclaim the School Board's rationale "uncontradicted," Maj. Op. at 10, it is for a jury, not the majority, to resolve whether a bona fide mistake was indeed the reason for the reassignment.  It is worth remembering that Collins's burden at summary judgment "is one of production, not persuasion; it can involve no credibility assessment."  Reeves, 530 U.S. at 142 (internal quotations omitted)).  By improperly crediting the School Board's side in this dispute, my colleagues have failed in their charge to "view the facts and draw all reasonable inferences therefrom in the light most favorable to [Collins], as the nonmoving party." Rosetta Stone Ltd. v. Google, Inc., 676 F.3d 144, 150 (4th Cir. 2012) (internal quotations omitted).

This case is not about whether the evidence offered by Collins establishes liability, but rather whether the evidence provides a legally sufficient basis for a jury to find for Collins on her ADEA claim.  Reeves merely provides Collins with her day in court.  The trier of fact may still choose to believe the School Board's asserted rationale, or may even conclude that the explanation was pretext for something other than unlawful

22

discrimination. But because Collins has provided sufficient evidence that the School Board's explanation for reassigning Collins was "unworthy of credence," <u>Reeves</u>, 530 U.S. at 147, she is entitled to a trial on her ADEA claim. I respectfully dissent from that portion of the majority's decision holding otherwise.