**Lorn Glenn WEBB, Plaintiff,**

v.

**NORTH CAROLINA DEPARTMENT OF CRIME CONTROL AND PUBLIC SAFETY, ALCOHOL LAW ENFORCEMENT DIVISION, Defendant.**

No. 7:08–CV–90–D.

United States District Court,
E.D. North Carolina,
Southern Division.

Sept. 11, 2009.

Julius LeVonne Chambers, Ferguson Stein Chambers Gresham and Sumter, P.A., Charlotte, NC, for Plaintiff.

Hal F. Askins, N.C. Dept. of Justice, Raleigh, NC, for Defendant.

## ORDER

JAMES C. DEVER III, District Judge.

Lorn Glenn Webb ("plaintiff" or "Webb") is a Native American who contends that the North Carolina Department of Crime Control and Public Safety, Alcohol Law Enforcement Division ("defendant" or "ALE") violated Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 1981, and 42 U.S.C. § 1983. Webb primarily complains about ALE's decision to suspend him with pay and benefits for approximately two months in 2007, while it investigated his role in an investigation of law enforcement corruption known as Operation Tarnished Badge. At the end of ALE's investigation, ALE could not determine that Webb violated the law or ALE policy and reinstated him with no loss in pay, benefits, or seniority. Webb now attacks his suspension and reinstatement and claims that ALE suspended him based on his race and in retaliation for exercising his rights under Title VII and section 1981 in 2004. Webb also attacks various other employment decisions. ALE denies any illegal discrimination and seeks summary judgment [D.E. 14], which Webb opposes [D.E. 16]. As explained below,

ALE's motion for summary judgment is granted.

## I.

On May 31, 1997, ALE hired Webb as an Agent I and assigned him to the Fayetteville district. Webb Dep. 6–7. As an Agent I with ALE, Webb was a law enforcement officer responsible for enforcing North Carolina laws concerning alcohol. In 1999, ALE promoted Webb to Agent II. *Id.* at 7.

In 2000, Webb resigned from ALE to accept a position with the North Carolina State Highway Patrol ("NCSHP"). *Id.* at 10. Shortly thereafter, Webb rescinded his resignation and ALE rehired him. *Id.* On February 1, 2001, Webb resigned from ALE (again) to pursue employment (again) at NCSHP. *Id.* at 9–10. However, Webb dropped out during NCSHP training, and ALE (again) rehired him. *Id.* at 11.

In 2002, Webb applied for promotion to assistant supervisor. *Id.* at 75–77. In order to be eligible for promotion, a candidate had to score 60 on a written exam. Robertson Aff. ¶ 5. Webb passed the written exam but, due to his low passing score, was placed sixteenth on the promotional list *Id.* ¶ 6. Because of his place on the promotional list, ALE did not promote Webb to one of the few assistant supervisor positions. *Id.*

In December 2003, Webb requested a transfer from Fayetteville to Wilmington due to issues that Webb had with his then-supervisor Bob Stocks. Webb Dep. 25–26. Webb's complaints included that Stocks was racially biased against Webb. *See id.* Deputy Director John Simmons contacted Webb in December 2003 or January 2004 to discuss the allegations. *See id.* at 26–27. Shortly thereafter, ALE transferred Stocks to Raleigh, assigned Stocks to Professional Standards (i.e., Internal Affairs), and demoted Stocks from supervisor to assistant supervisor. *See id.* at 49; Rob-

ertson Dep. 19, Exs. 1, 7; Battle Dep. 42. After ALE transferred Stocks to Raleigh, Webb withdrew his transfer request. Webb Dep. 49–50; *see* Webb Aff. ¶ 12.

In 2004, Webb requested promotion to Agent III. Battle Dep. 26, 29. Webb's supervisor, Herbert Battle, did not immediately recommend Webb for promotion in August 2004, because Battle (who began supervising Webb in February 2004) did not have sufficient information concerning Webb's work to recommend a promotion. *Id.* at 36; *see* Robertson Dep., Ex. 7. At the time, Battle knew that Webb's prior supervisor and assistant supervisor did not recommend Webb for promotion. Battle Dep. 29–30; *cf.* Robertson Aff. ¶ 8 (discussing promotion eligibility requirements). Nonetheless, after supervising Webb for approximately six more months, Battle recommended Webb for promotion to Agent III, and, in February 2005, ALE promoted Webb. *See* Battle Dep. 58; Webb Dep. 18–19.

In 2005, Webb again applied for promotion to assistant supervisor. Webb Dep. 77. Webb took the promotion exam, but failed the exam. *Id.* at 78; *see* Robertson Aff. ¶ 11 (noting that ALE policy stated that "a failing score shall end the candidate's eligibility for promotion"). Webb did not challenge the exam results. *See* Webb Dep. 79–81.

In 2005, Webb requested training in Spanish and driving instruction. *See* Webb Aff. ¶ 16; Webb Dep. 21–25, 159. ALE did not permit Webb to attend either training because he already held several certifications. *See* Webb Aff. ¶ 16; Webb Dep. 22–23. Attending trainings does not affect an ALE agent's pay, benefits, or rank. *See* Robertson Aff. ¶ 16.

In June 2006, Webb's supervisor, Alan Fields, conducted a career-banding assessment of Webb. *See* Fields Aff. ¶ 4, Ex. 1; Domico Aff. ¶ 3 (explaining process). The career-banding system classifies and stan-

dardizes employees' job types. *See* Fields Aff., Ex. 1. ALE conducted the same career-banding assessment on all similarly situated employees, and the career-banding assessment did not impact Webb's salary, benefits, or job duties. *See* Domico Aff. ¶ 4; Chandler Aff. ¶ 3.

On July 11, 2006, Webb resigned from ALE (again) to pursue employment (again) with NCSHP. *See* Webb Dep. 11, 50–53. Specifically, Webb attempted to convince NCSHP to permit him to transfer laterally from ALE to NCSHP, even though no one within ALE or NCSHP told him that such a transfer was permitted. *See id.* at 13–15, 51. After applying to transfer, NCSHP advised Webb that he could not transfer laterally from ALE to NCSHP. *Id.* at 51. Webb then quit NCSHP training and sought to return to ALE. *Id.* at 52–53.

Webb met with ALE Director Robertson and asked to be rehired. *See id.* at 53–55. At the direction of Director Robertson, ALE rehired Webb as an Agent III at the same salary that he was making when he resigned and assigned Webb to Raleigh. *See id.* at 53–55; Robertson Aff. ¶ 14. Shortly after being rehired, Webb asked to transfer to Fayetteville, but ALE denied the request *See* Webb Dep. 56.

Nonetheless, in January 2007, ALE approved Webb's request to live outside the district in which he worked. *See id.* at 59. Shortly thereafter, Webb asked to transfer from Raleigh to Wilmington, which ALE approved. *Id.* at 58.

On February 8, 2007, Director Robertson received a telephone call from an anonymous citizen that three law enforcement officers (including Webb) were implicated in a joint state-federal investigation called "Operation Tarnished Badge." *See* Robertson Aff. ¶ 13; Robertson Dep. 20–21. Operation Tarnished Badge is a highly publicized, wide-ranging probe of corrupt law enforcement officers in Robeson County, North Carolina. The investigation has resulted in over twenty federal criminal convictions of state law enforcement officers, including the conviction of former Robeson County Sheriff Glenn Maynor and nearly his entire command structure. *See United States v. Maynor,* 310 Fed.Appx. 595, 596–98 (4th Cir.2009) (per curiam) (unpublished). The crimes have involved a variety of corrupt activities, including extorting money from alleged drug dealers, kidnapping, money laundering, committing perjury in front of a federal grand jury, conspiracy, and satellite television piracy.[1] After receiving the

---

1. Defendants convicted as part of Operation Tarnished Badge include Glenn Maynor, Waldo Stallings, Jr., Steven Lovin, Charles Strickland, Roger Taylor, Ricky Lynn Britt, Robert Ivey, Jr., James Owen Hunt, Billy Strickland, Vincent Sinclair, Randall Patterson, Gary Odum, Herman Madden, James Carter, Hobert Britt, Joey Smith, Lester Floyd, Kevin Meares, Paul Pittman, Billy Hunt, James Allen Black, Jr., Patrick Ferguson. *See United States v. Maynor,* No. 7:07–CR–104–BO (E.D.N.C. May 5, 2009) (unpublished) (judgment); *United States v. Stallings,* No. 7:07–CR–77–BO (E.D.N.C. Sept. 10, 2008) (unpublished) (judgment); *United States v. Lovin,* No. 7:06–CR–45–BO–3 (E.D.N.C. May 30, 2008) (unpublished) (judgment); *United States v. Strickland,* No. 7:07–CR–45–BO–2 (E.D.N.C. May 30, 2008) (unpublished) (judgment);

*United States v. Taylor,* No. 7:06–CR–45–BO–1 (E.D.N.C. May 30, 2008) (unpublished) (judgment); *United States v. Britt,* No. 7:07–CR–14–BO (E.D.N.C. Apr. 16, 2008) (unpublished) (judgment); *United States v. Ivey,* No. 7:07–CR–105–BO (E.D.N.C. Apr. 16, 2008) (unpublished) (judgment): *United States v. Hunt,* No. 7:06–CR–53–BO (E.D.N.C. Mar. 17, 2008) (unpublished) (judgment); *United States v. Strickland,* No. 7:07–CR–13–BO (E.D.N.C. Mar. 17, 2008) (unpublished) (judgment); *United States v. Sinclair,* No. 7:07–CR–15–BO (E.D.N.C. Feb. 14, 2008) (unpublished) (judgment); *United States v. Patterson,* No. 7:07–CR–31–BO (E.D.N.C. Feb. 13, 2008) (unpublished) (judgment); *United States v. Odum,* No. 7:06–CR–111–BO (E.D.N.C. Feb. 13, 2008) (unpublished) (judgment); *United States v. Madden,* No. 7:07–CR–30–BO

anonymous complaint, Director Robertson contacted North Carolina State Bureau of Investigation ("SBI") Director Robin Pendergraft. Director Pendergraft told Director Robertson that Webb was a subject of the investigation. *See* Robertson Aff. ¶ 13; Robertson Dep. 20–21. Director Pendergraft told Director Robertson that the allegation concerning Webb involved the alleged theft of a satellite card in order to obtain satellite television. *See* Robertson Dep. 20–23.

Director Robertson concluded that if the allegation were true, Webb's conduct (at a minimum) violated ALE policy. *See id.* at 21–22: Robertson Aff. ¶ 13. Thus, Director Robertson filed an internal personnel complaint against Webb. Robertson Dep. 21. On March 1,2007, ALE advised Webb that he was the subject of an internal investigation, and ALE gave Webb a copy of the complaint Robertson Aff. ¶ 13. On March 7, 2007, Director Robertson placed Webb on administrative leave with pay and benefits for thirty days. *Id.* Director Robertson then asked Bob Stocks, who by this time had become a supervisor in ALE's Professional Standards, to conduct an internal investigation concerning Webb's alleged theft of a satellite card. *Id.* Because Director Robertson anticipated that the Operation Tarnished Badge investigation would complicate Stocks' ability to investigate Webb, Director Robertson sought and received approval from Crime Control and Public Safety Secretary Brian Beatty and the Office of State Personnel to extend Webb's suspension with pay and benefits until May 4, 2007. *Id.*

The ongoing criminal investigation did hamper Stocks' internal investigation. *See* Robertson Dep. 21–23, 29. Webb denied stealing a satellite card. As of early May 2007, Stocks was not able to conclude that Webb stole a satellite card or otherwise violated ALE policy. *See* Robertson Aff. ¶ 13. On May 3, 2007, Director Robertson reinstated Webb with no loss in pay, benefits, or seniority. *See* Webb Dep. 146; Robertson Aff. ¶ 13; Robertson Dep. 22. Webb resumed his duties as an Agent in with ALE. *See* Webb Dep. 146; Robertson Aff. ¶ 13.

On May 29, 2007, Webb filed a charge of discrimination with the EEOC. He alleged race discrimination and retaliation. In his EEOC charge, Webb wrote:

I. I filed a complaint of race discrimination against a former supervisor [Bob Stocks] and as a result he was demoted in 2004. On or around March 7, 2007[,] I was suspended with pay for approx[imately] two months. On or around April 13, 2007, I was given a pre-disciplinary conference and threatened with termination.

II. The Respondent [ALE] advised that "After investigation and through your own admissions, it has been substantiated that you possessed an illegal digital reception card in violation of 18 U.S.C. 1020."

(E.D.N.C. Feb. 13, 2008) (unpublished) (judgment); *United States v. Carter*, No. 7:07–CR–81–BO (E.D.N.C. Feb. 13, 2008) (unpublished) (judgment); *United States v. Britt*, No. 7:07–CR–106–BO (E.D.N.C. Feb. 13, 2008) (unpublished) (judgment); *United States v. Smith*, No. 7:06–CR–67–BO (E.D.N.C. Jan. 8, 2008) (unpublished) (judgment); *United States v. Floyd*, No. 7:07–CR–32–BO (E.D.N.C. Jan. 7, 2008) (unpublished) (judgment); *United States v. Meares*, No. 7:07–CR–54–BO (E.D.N.C. Dec. 11, 2007) (unpublished) (judgment); *United States v. Pittman*, No. 7:07–CR–85–BO (E.D.N.C. Nov. 15, 2007) (unpublished) (judgment); *United States v. Hunt*, No. 7:06–CR–90–BO (E.D.N.C. Nov. 15, 2007) (unpublished) (judgment); *United States v. Black*, No. 7:06–CR–57–BO (E.D.N.C. Oct. 17, 2007) (unpublished) (judgment): *United States v. Ferguson*, No. 7:06–CR–56–BO (E.D.N.C. Oct. 16, 2007) (unpublished) (judgment).

No reason has been given to me for processing this investigation against me and I believe that it was in retaliation for the complaints that I have filed against the investigator [Bob Stocks]. I submitted evidence showing that I had not engaged in the alleged behavior[;] however, the investigation is still going on even though I have been returned to work as of May 3, 2007.

Even though it is the policy to investigate allegations against agents, I do not believe any allegations have been filed against me. I believe the investigator [Bob Stocks] is retaliating against me by attempting to find anything on me to get me discharged. I further know that a white agent that was given the vacancy that I requested, was told that ... he was being discharged, without any form of investigation. He was called the next day and told that he would not be terminated but transferred from Raleigh to Fayetteville.

III. I feel that have been discriminated against due to may race, Indian[,] and in retaliation for my complaints of violations of Title VII....

Pl.'s Br. in Opp. to Def.'s Mot for Summ. J. [hereinafter "Pl.'s Br."], Ex. 1 (EEOC charge). In his EEOC charge, Webb alleged that the discrimination began on "4–13–2007," and ended on "5–18–2007." *Id.* On March 11, 2008, the EEOC notified Webb that its investigation failed to substantiate his charge and issued him a right-to-sue letter. *See* Compl. ¶ 8. On June 3, 2008, Webb filed suit [D.E. 1, 2, 3]. At the close of discovery, ALE filed a motion for summary judgment [D.E. 14], and Webb filed a response in opposition [D.E. 16].

## II.

In considering ALE's motion for summary judgment, the court applies the familiar summary judgment standard and views the evidence in the light most favorable to plaintiff. *See* Fed.R.Civ.P. 56(c); *Scott v. Harris,* 550 U.S. 372, 378, 127 S.Ct. 1769, 167 L.Ed.2d 686 (2007); *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–55, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). However, when considering a motion for summary judgment, the court need not accept the nonmovant's "legal conclusions drawn from the facts" or "accept as true unwarranted inferences, unreasonable conclusions, or arguments." *Kloth v. Microsoft Corp.,* 444 F.3d 312, 319 (4th Cir.2006) (quotations omitted) (discussing Rule 12(b)(6) of the Federal Rules of Civil Procedure); *see Ashcroft v. Iqbal,* —— U.S. ——, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009).

### A.

Webb seeks relief under Title VII for alleged race discrimination and retaliation. Before a person may file suit under Title VII, he must file a charge of discrimination with the EEOC. *See* 42 U.S.C. § 2000e–5(f)(1). An EEOC charge is sufficient "only if it is sufficiently precise to identify the parties, and to describe generally the action or practices complained of." *Chacko v. Patuxent Inst.,* 429 F.3d 505, 508 (4th Cir.2005) (quotation omitted); *see Miles v. Dell, Inc.,* 429 F.3d 480, 491 (4th Cir.2005). Moreover, the EEOC charge's content determines the scope of plaintiff's right to maintain a Title VII claim in court *See, e.g., Bryant v. Bell Atl. Md., Inc.,* 288 F.3d 124, 132 (4th Cir.

2002). "Only those discrimination claims stated in the initial charge, those reasonably related to the original complaint, and those developed by reasonable investigation of the original complaint may be maintained in a subsequent Title VII lawsuit." *Evans v. Techs. Applications & Serv. Co.,* 80 F.3d 954, 963 (4th Cir.1996); *see Miles,* 429 F.3d at 491. "Thus, a claim in formal litigation will generally be barred if the EEOC charge alleges discrimination on one basis, such as race, and the formal litigation claim alleges discrimination on a separate basis, such as sex." *Jones v. Calvert Group, Ltd.,* 551 F.3d 297, 300 (4th Cir.2009). The same principle holds true with respect to a plaintiff who files an EEOC charge that alleges discrimination with respect to one allegedly adverse employment action (e.g., a termination), but then seeks to expand the formal litigation claim to a separate allegedly adverse employment action (e.g., a failure to promote). *See Chacko,* 429 F.3d at 509.

■ The rationale behind these principles concerning the scope of an EEOC charge relates to providing fair notice to an employer concerning a charge and to permitting the EEOC to investigate and (if appropriate) resolve the dispute without a lawsuit *See, e.g., id.* at 508–09; *Miles,* 429 F.3d at 491. A party's failure "to exhaust administrative remedies concerning a Title VII claim deprives the federal courts of subject matter jurisdiction over the claim." *Jones,* 551 F.3d at 300.

■ ALE argues that Webb's EEOC charge limits his claim to events concerning his March 2007 suspension with pay and benefits pending the outcome of the internal investigation about the satellite card. *See* Def.'s Br. in Supp. of Mot. for Summ. J. 9 [hereinafter "Def.'s Br."]. Thus, ALE contends that the court lacks jurisdiction over the numerous additional claims that Webb includes in his complaint and in his opposition to ALE's motion for summary judgment. *See id.* at 9–10.

In opposition, Webb argues that he completed the EEOC charge without an attorney's assistance. Accordingly, he contends that the court should construe the EEOC charge and resulting EEOC investigation to encompass claims concerning failure to promote, failure to train, failure to transfer, racial career banding, and mistreatment of Native Americans in job assignments. *See* Pl.'s Br. 1–4.

■ In *Chacko,* the Fourth Circuit observed that "[o]ur cases make clear that the factual allegations made in formal litigation must correspond to those set forth in the administrative charge." 429 F.3d at 509. For example, "[a] claim will … typically be barred if the administrative charge alleges one type of discrimination—such as discriminatory failure to promote—and the claim encompasses another type—such as discrimination in pay and benefits." *Id.* "Similarly, [the Fourth Circuit] ha[s] held that the allegation of a discrete act or acts in an administrative charge is insufficient when the plaintiff['s lawsuit] subsequently alleges a broader pattern of misconduct." *Id.* Thus, an EEOC charge alleging a claim of discriminatory discipline does not permit a plaintiff to pursue a lawsuit alleging a broader pattern of discrimination in hiring, training, and promotion. *Id.; see Dennis v. County of Fairfax,* 55 F.3d 151, 156 (4th Cir.1995).

*Chacko* defeats Webb's effort to expand the number of Title VII claims in this lawsuit. The court quoted Webb's EEOC charge and that charge makes clear that he is contending that his March 2007 suspension was due to his race and in retaliation for his 2004 complaint concerning Stocks. *See* Pl.'s Br., Ex. 1. Thus, the court lacks subject-matter jurisdiction over Webb's Title VII claim except to the ex-

tent that he is alleging that his March 2007 suspension was due to his race and in retaliation for his 2004 complaint concerning Stocks. *See, e.g., Jones,* 551 F.3d at 301; *Chacko,* 429 F.3d at 509; *Miles,* 429 F.3d at 491–92; *Evans,* 80 F.3d at 963. Accordingly, the court dismisses for lack of subject-matter jurisdiction all other Title VII claims in plaintiff's complaint. *See Jones,* 551 F.3d at 301.

■ Alternatively, even if the court has jurisdiction, the court dismisses as untimely any Title VII claim that occurred more than 300 days before Webb filed his May 23, 2007 EEOC charge. *See, e.g., Nat'l R.R. Passenger Corp. v. Morgan,* 536 U.S. 101, 110, 114–15, 122, 122 S.Ct. 2061, 153 L.Ed.2d 106 (2002); *Williams v. Giant Food Inc.,* 370 F.3d 423, 429 (4th Cir.2004). The court uses the 300–day period because Webb is a state employee, and the North Carolina State Office of Administrative Hearings has subject-matter jurisdiction over a charge that an employee of the State of North Carolina files. *See, e.g.,* 29 C.F.R. § 1601.74; *Bratcher v. Pharm. Prod. Dev., Inc.,* 545 F.Supp.2d 533, 543 (E.D.N.C.2008). Thus, to the extent that Webb seeks relief under Title VII for the following claims, such claims are untimely: (1) denial of promotion to assistant supervisor in 2002; (2) denial of transfer request in 2003; (3) denial of promotion to Agent II in 2004; (4) denial of promotion to assistant supervisor in 2005; (5) denial of request to attend Driving Instructors School and Spanish training in 2005, and (6) any other alleged adverse employment action predating July 27, 2006 (i.e., 300 days before his May 23, 2007 EEOC charge). Each of these alleged adverse employment actions is a discrete act that occurred on the day that it happened and thereby triggered the 300–day clock. *See, e.g., Morgan,* 536 U.S. at 110, 122 S.Ct. 2061. As such, each claim is time-barred. *Id.* at 114–15, 122 S.Ct. 2061.

■ As for the merits of plaintiff's Title VII claim concerning his March 2007 suspension with pay and benefits, he alleges race discrimination and retaliation. Webb has no direct evidence of race discrimination or retaliation and proceeds under the burden-shifting framework articulated in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). *See Miles,* 429 F.3d at 485–89 (describing framework). Notably, whether a plaintiff claims race discrimination or retaliation under Title VII, Title VII requires "as an absolute precondition to suit that some adverse employment action have occurred." *Bristow v. Daily Press, Inc.,* 770 F.2d 1251, 1255 (4th Cir.1985); *see James v. Booz–Allen & Hamilton, Inc.,* 368 F.3d 371, 375 (4th Cir.2004) ("Regardless of the route a plaintiff follows in proving a Title VII action, the existence of some adverse employment action is required." (citation and footnote omitted)). The requirement of adverse employment action recognizes that "Congress did not intend Title VII to provide redress for trivial discomforts endemic to employment." *Boone v. Goldin,* 178 F.3d 253, 256 (4th Cir.1999). In assessing whether an employer has taken adverse employment action, the court examines whether the employer took an action against the employee that a reasonable employee would find materially adverse. *See, e.g., Burlington N. & Santa Fe Ry. v. White,* 548 U.S. 53, 67–70, 126 S.Ct. 2405, 165 L.Ed.2d 345 (2006).

■ When ALE (through Director Robertson) placed Webb on administrative leave with pay and benefits from March 7, 2007, through May 3, 2007, and then reinstated him to his identical position with no loss in pay, benefits, or seniority, ALE did not take adverse employment action against Webb. *See id.; Joseph v. Leavitt,* 465 F.3d 87, 90 (2d Cir.2006); *Singletary*

*v. Mo. Dep't of Corr.*, 423 F.3d 886, 889, 892 (8th Cir.2005); *Peltier v. United States*, 388 F.3d 984, 988 (6th Cir.2004); *Von Gunten v. Maryland*, 243 F.3d 858, 869 (4th Cir.2001) *abrogated in part by Burlington N. & Sante Fe Ry. v. White*, 548 U.S. 53, 126 S.Ct. 2405, 165 L.Ed.2d 345 (2006); *Breaux v. City of Garland*, 205 F.3d 150, 154–55, 158 (5th Cir.2000). Accordingly, plaintiff's Title VII discrimination and retaliation claims fail.

 Alternatively, even if the court considered the merits of Webb's Title VII retaliation claim, it fails for numerous other reasons. To establish a prima facie case of retaliation under Title VII, a plaintiff must show that (1) he engaged in protected activity; (2) his employer took an action against him which a reasonable employee would find materially adverse; and (3) the employer took the materially adverse employment action because of the protected activity. *See, e.g., Burlington N. & Santa Fe Ry.*, 548 U.S. at 67–70, 126 S.Ct. 2405; *Holland v. Wash. Homes, Inc.*, 487 F.3d 208, 218 (4th Cir.2007); *Price v. Thompson*, 380 F.3d 209, 212 (4th Cir. 2004). A plaintiff cannot prove causation without showing that the decisionmaker actually had knowledge of the protected activity at the time the decisionmaker decided to take the adverse employment action. *See, e.g., Hooven–Lewis v. Caldera*, 249 F.3d 259, 278 (4th Cir.2001); *Gibson v. Old Town Trolley Tours of Wash., D.C., Inc.*, 160 F.3d 177, 181–82 (4th Cir.1998); *Dowe v. Total Action Against Poverty in Roanoke Valley*, 145 F.3d 653, 657 (4th Cir.1998). In light of Director Robertson's undisputed testimony that he did not know that Webb had complained in 2004 about Stocks' alleged race discrimination, ALE is entitled to summary judgment on the retaliation claim. *See* Robertson Dep. 5; Robertson Aff. ¶ 7. Finally, even if Webb established a prima facie case, ALE has articulated a legitimate, nondiscriminatory reason for Webb's suspension with pay and

benefits: a concern that Webb engaged in a form of satellite piracy while an ALE agent *See* Robertson Aff. ¶ 13. Webb, however, has failed to raise a genuine issue of material fact that Director Robertson's reason for the suspension with pay and benefits was pretextual. *See, e.g., Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 143, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000); *Holland*, 487 F.3d at 218; *Hux v. City of Newport News*, 451 F.3d 311, 315 (4th Cir.2006): *Hill v. Lockheed Martin Logistics Mgmt., Inc.*, 354 F.3d 277, 297–98 (4th Cir.2004) (en banc). Thus, ALE is entitled to summary judgment on plaintiff's Title VII retaliation claim.

 As for the merits of Webb's Title VII race discrimination claim, Webb is alleging discriminatory discipline. To establish a prima facie case of discriminatory discipline, plaintiff must show (1) that he is a member of a class protected under Title VII; (2) that the prohibited conduct in which he engaged was comparable in seriousness to misconduct of employees outside the protected class; and (3) that the disciplinary measures enforced against him were more severe than those enforced against other employees. *See, e.g., Taylor v. Va. Union Univ.*, 193 F.3d 219, 234 (4th Cir.1999) (en banc), *abrogated in part on other grounds by Desert Palace, Inc. v. Costa*, 539 U.S. 90, 123 S.Ct. 2148, 156 L.Ed.2d 84 (2003); *Cook v. CSX Transp. Corp.*, 988 F.2d 507, 511 (4th Cir.1993); *Moore v. City of Charlotte*, 754 F.2d 1100, 1105–06 (4th Cir.1985). The record contains no evidence that Director Robertson received an allegation against another ALE employee similar to the allegation that he received concerning Webb and failed to follow the same course of conduct Thus, even if Webb's suspension with pay and benefits is an adverse employment action, Webb's failure to show that Director Robertson treated a similarly situat-

ed non-Native American ALE agent more favorably defeats plaintiff's discriminatory discipline claim. *See, e.g., Taylor,* 193 F.3d at 234; *Cook,* 988 F.2d at 511; *Moore,* 754 F.2d at 1105–06; *McDougal–Wilson v. Goodyear Tire & Rubber Co.,* 427 F.Supp.2d 595, 610 (E.D.N.C.2006). Further, even if plaintiff did establish a prima facie case, ALE articulated a legitimate, nondiscriminatory reason for the suspension with pay and benefits, and Webb has failed to raise a genuine issue of material fact concerning pretext. Thus, Webb's Title VII race discrimination claim fails.

### B.

Next, the court addresses Webb's claim under 42 U.S.C. § 1981. Under 42 U.S.C. § 1981, "[a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts … as is enjoyed by white citizens." 42 U.S.C. § 1981(a). Section 1981 provides a remedy for a person who claims race discrimination concerning a contract or retaliation in response to complaining about a violation of 42 U.S.C. § 1981. *See, e.g., CBOCS W., Inc. v. Humphries,* —— U.S. ——, 128 S.Ct. 1951, 1954–55, 170 L.Ed.2d 864 (2008). Unlike Title VII, a person need not file an administrative charge before filing a lawsuit containing a section 1981 claim. Moreover, the statute of limitations under section 1981 for Webb's section 1981 claims is four years. *See* 28 U.S.C. § 1658(a); *Jones v. R.R. Donnelley & Sons Co.,* 541 U.S. 369, 383–85, 124 S.Ct. 1836, 158 L.Ed.2d 645 (2004). Further, where a plaintiff lacks direct evidence of illegal discrimination under section 1981, courts apply the *McDonnell Douglas* burden-shifting framework. *See, e.g., Bryant v. Aiken Reg'l Med. Ctrs. Inc.,* 333 F.3d 536, 543–45 (4th Cir.2003). Because Webb lacks such direct evidence, the court again applies the *McDonnell Douglas* framework.

In light of the four-year statute of limitations, any claim arising before June 3, 2004, is time-barred. As for Webb's timely section 1981 claims, the court construes Webb's complaint to include section 1981 claims concerning the following employment decisions: (1) the August 2004 failure to promote Webb to Agent HI; (2) the 2005 failure to promote Webb to assistant supervisor; (3) the 2005 failure to send Webb to Driving Instructors School or Spanish training; (4) the June 2006 career-banding assessment; (5) the August 2006 decision to rehire Webb (following his third resignation from ALE) and to assign him to Raleigh; (6) the late 2006 denial of Webb's oral request to transfer to Fayetteville; (7) the March 2007 suspension with pay and benefits and the May 2007 reinstatement; (8) the 2008 failure to assign Webb to an SBI task force in Raleigh; (9) the 2008 failure to assign Webb to a federal task force; and (10) the decision that the Director of Robeson Community College made not to permit Webb to teach during his off-duty hours because of Webb's connection with the Operation Tarnished Badge investigation.

Webb's section 1981 claims fail for numerous reasons. As for Battle's August 2004 decision not to promote Webb to Agent III, Battle testified concerning the nondiscriminatory rationale for his August 2004 decision and for his later decision to recommend promoting Webb to Agent III. *See* Battle Dep. 29–31, 35–36, 57–62. Even if the court assumes that Webb has established a prima facie failure-to-promote claim, ALE articulated a legitimate, nondiscriminatory reason for the August 2004 failure to promote, and plaintiff has failed to raise a genuine issue of material fact as to pretext. *See, e.g., Reeves,* 530 U.S. at 143, 120 S.Ct. 2097; *Holland,* 487 F.3d at

218; *Hux,* 451 F.3d at 315; *Mereish v. Walker,* 359 F.3d 330, 336 (4th Cir.2004). The same conclusion applies to the 2005 decision not to promote Webb to assistant supervisor in light of Webb having failed the written examination necessary for promotion eligibility. *See, e.g., Campbell v. Univ. of Akron,* 211 Fed.Appx. 333, 348 (6th Cir.2006) (unpublished); *Diamond v. Colonial Life & Accident Ins. Co.,* 416 F.3d 310, 319 n. 6 (4th Cir.2005); *Bryant,* 333 F.3d at 544–45.

As for the 2005 decision not to send Webb to Driving Instructors School or Spanish training or the June 2006 career-banding assessment, neither decision had any impact on Webb's pay, benefits, or employment. *See* Domico Aff. ¶ 4; Chandler Aff. ¶ 3; Robertson Aff. ¶ 16. Thus, neither decision is actionable under section 1981. *See, e.g., James,* 368 F.3d at 375; *Bristow,* 770 F.2d at 1255.

As for Director Robertson's August 2006 decision to rehire Webb (following Webb's third resignation) and to assign him to an available position in Raleigh, the action bespeaks Director Robertson's lack of discriminatory animus. Indeed, if Director Robertson really wanted to retaliate due to plaintiff's 2004 complaint concerning Stocks or to discriminate because of Webb's race, Director Robertson would not have rehired Webb. *Cf. Proud v. Stone,* 945 F.2d 796, 797–98 (4th Cir.1991) (reasoning that "[f]rom the standpoint of the putative discriminator, it hardly makes sense to hire workers from a group one dislikes ... only to fire them once they are on the job" and concluding that "[w]hen the hirer and firer are the same individual, there is a powerful inference relating to the ultimate question that discrimination did not motivate the employer") (citation and quotations omitted). Thus, the claim fails.

As for the late 2006 denial of Webb's oral request to transfer to Fayetteville, Webb presents no evidence that a similarly situated ALE agent was treated more favorably. Thus, the claim fails. *See, e.g., Diamond,* 416 F.3d at 319 n. 6; *McDougal–Wilson,* 427 F.Supp.2d at 607–09. As for the March 2007 suspension with pay and benefits and the May 2007 reinstatement, the claim fails for the same reasons that the Title VII claim fails.

As for the failure to assign Webb to an SBI task force in 2007 or to assign him to a federal task force in 2008, ALE did not participate in the federal task force in 2008. *See* Chandler Aff. ¶ 4. Thus, plaintiff cannot establish a prima facie case. Likewise, although in 2007 ALE did have one ALE agent assigned to an SBI task force in Raleigh (Chandler Aff. ¶ 5), plaintiff never applied to be on the task force. As such, he fails to establish a prima facie case. *See, e.g., Diamond,* 416 F.3d at 319 n. 6; *McDougal–Wilson,* 427 F.Supp.2d at 607–09.

Finally, Webb attacks the decision of the Director of Robeson Community College not to permit Webb to teach during his off-duty hours. Notably, ALE approved Webb's request for off-duty employment. *See* Webb Dep. 74–75. Nevertheless, the Director of Robeson Community College told Webb that he could not teach at the college because of his connection to the Operation Tarnished Badge investigation. *See id.* at 168.

Robeson Community College is a different entity than ALE. *See* Chandler Aff. ¶¶ 6–7. ALE did not make the decision not to permit Webb to teach. *See id.* ¶¶ 6–8. As such, Webb's section 1981 claim against ALE fails. Accordingly, ALE is entitled to summary judgment on plaintiff's section 1981 claims.

C.

To the extent that Webb seeks relief under 42 U.S.C. § 1983 and the Four-

teenth Amendment, any claim arising before June 3, 2005, is barred by the applicable three-year statute of limitations. *See, e.g., Wallace v. Kato,* 549 U.S. 384, 387–88, 127 S.Ct. 1091, 166 L.Ed.2d 973 (2007); *Owens v. Okure,* 488 U.S. 235, 249–50, 109 S.Ct. 573, 102 L.Ed.2d 594 (1989); *Wilson v. Garcia,* 471 U.S. 261, 279–80, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1985); *Nat'l Adver. Co. v. City of Raleigh,* 947 F.2d 1158, 1161–62 (4th Cir.1991). Moreover, any claim arising after June 3, 2005, fails for the reasons already described in this order.

### III.

As explained above, the court GRANTS defendant's motion for summary judgment [D.E. 14]. Plaintiff's Title VII claim concerning his March 2007 suspension with pay and benefits is DISMISSED on the merits. Plaintiff's other Title VII claims are DISMISSED due to a lack a subject-matter jurisdiction. Alternatively, the Title VII claims are DISMISSED as untimely or on the merits. Plaintiff's claims under 42 U.S.C. § 1981 and 42 U.S.C. § 1983 are DISMISSED as untimely or on the merits.